UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

IRENIO SIMION RUIZ-RAMIREZ,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,
MICHAEL B. MUKASEY, Attorney General
of the United States, MICHAEL CHERTOFF,
Secretary of Homeland Security of the United
States, EMILIA BARDINI, Director USCIS
San Francisco Asylum Office, and GERARD
HEINAUER, Director USCIS Nebraska
Service Center,

        Defendants.

CV 08-582-KI

OPINION AND ORDER

KING, Judge:

    Plaintiff Irenio Simion Ruiz-Ramirez sued the United States, the U.S. Attorney General,

PAGE 1 - OPINION AND ORDER

the U.S. Secretary of Homeland Security, the Director of the United States Citizenship and Immigration Services ("USCIS") for the San Francisco Asylum Office, and the Director of USCIS for the Nebraska Service Center seeking declaratory and injunctive relief as a class member under the class action settlement agreement in American Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC Agreement" or "ABC").[1]  Before the court is Defendants' Motion to Dismiss (doc. 18) all claims as moot pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Oral argument is not necessary to resolve this motion.  For the reasons that follow, the motion is GRANTED and Plaintiff's claims are DISMISSED.

## I. Background

On December 14, 1990, Defendants agreed to settle a class action lawsuit filed by numerous churches, organizations, and individuals on behalf of more than 300,000 asylum applicants from El Salvador and Guatemala.  ABC, 760 F. Supp. at 799-800.  The plaintiffs in that case alleged that Defendants systematically violated the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, in processing and adjudicating Guatemalan and Salvadoran asylum claims.  On January 31, 1991, the U.S. District Court for the Northern District of California approved and incorporated the ABC Settlement Agreement into an order.  ABC, 760 F. Supp. at 797.

---

[1] Defendants in American Baptist Churches v. Thornburgh were the United States, the U.S. Attorney General, the U.S. Secretary of State, and the U.S. Immigration and Naturalization Service ("INS").  On March 1, 2003, INS was abolished and its functions were transferred to the Department of Homeland Security ("DHS").  The Homeland Security Act of 2002, Pub. L. 107-296 §§101 et seq., 116 Stat 2135 (Nov. 25, 2002).  The functions of the INS Asylum Office were transferred to the Bureau of Citizenship and Immigration Services, now known as the United States Citizenship and Immigration Services ("USCIS").  6 U.S.C. § 271.  Because the ABC Settlement Agreement "impose[d] binding obligations on the parties and their successors," ABC, 760 F. Supp. at 799, this Opinion and Order refers to the United States, the Attorney General, INS, DHS, and USCIS collectively as "Defendants."

PAGE 2 - OPINION AND ORDER

The ABC Agreement applies to two classes: "all Salvadorans in the United States as of September 19, 1990," and "all Guatemalans in the United States as of October 1, 1990." Id. at 799. Under the Agreement, class members who have not been convicted of an aggravated felony and timely filed their intent to apply for asylum are entitled to a "de novo, unappealable asylum adjudication before an Asylum Officer, including a new interview, under the regulations in effect on October 1, 1990." Id. Class members also benefit from special provisions governing work authorization, stays of removal, and other specific, specialized asylum adjudication procedures not generally available to non-class members. Id. at 804-05. To receive those benefits, Guatemalan class members were required to either file a written notice of intent to either receive class benefits, or apply for a de novo asylum adjudication by December 31, 1991. Id. at 800.

Plaintiff is a Guatemalan citizen who has lived in the United States since 1989. On December 18, 1991, he filed an application for asylum using Defendants' Form I-589. On or about September 13, 2005, Defendants interviewed Plaintiff regarding his 1991 asylum application.[2] Defendants initially determined that Plaintiff did not properly tender notice of his intent to receive benefits under the ABC Agreement. As such, Defendants advised Plaintiff that he was ineligible for benefits under the ABC Agreement and that they intended to process his asylum claim under the current regulations, rather than the regulations in effect on October 1, 1990, as provided for in the Agreement.

On July 19, 2006, Defendants again interviewed Plaintiff about his asylum claim. True to their word, Defendants did not use the asylum adjudication procedures set out in the ABC

---

[2]Citing concerns about the proper handling of ABC asylum applications, Defendants periodically suspended all action as to ABC asylum applicants from 1992 through 2003.

PAGE 3 - OPINION AND ORDER

Agreement. On July 27, 2006, Defendants denied Plaintiff's asylum application without providing for an opportunity to inspect the record or respond to an intent to deny benefits. Shortly thereafter, Defendants initiated removal proceedings, and on October 29, 2007, an Immigration Judge ordered Plaintiff's removal to Guatemala.

On November 29, 2007, the Ninth Circuit clarified what constitutes evidence of notice of an applicant's intent to receive benefits under the ABC Agreement. See Chaly-Garcia v. United States, 508 F.3d 1202 (9th Cir. 2007). The Ninth Circuit interpreted the ABC Agreement to require Guatemalan class members seeking benefits to submit "within a set time frame, a writing 'indicat[ing]' one of two things: (1) an intent to apply for a de novo asylum adjudication, or (2) an intent to receive the benefits of the ABC Agreement." Id. at 1204. The Ninth Circuit concluded that a "Plaintiff's written asylum application, which demonstrated his membership in the ABC class, thus requested the benefits of the ABC Agreement and was a writing that indicated an intent to receive them." Id.

On May 14, 2008, Plaintiff sued Defendants, alleging that pursuant to Chaly-Garcia, he is entitled to benefits under the ABC Agreement because he filed his I-589 application for asylum prior to the class deadline. Plaintiff asserted four claims: (1) that he properly tendered notice of his intent to opt-in to the ABC Agreement and is entitled to the rights and benefits of the Agreement, Complaint ¶ 23; (2) that he is entitled to an asylum adjudication that conforms with specific procedures required by the ABC Agreement, Id. ¶ 24; (3) that he should be free from removal proceedings until all of his rights under the ABC Agreement have been effectuated, Id. ¶ 25; and (4) that he should have the right to work authorization, Id. ¶ 26.

In response to the Ninth Circuit's ruling, Defendants issued a memorandum entitled

PAGE 4 - OPINION AND ORDER

"Making ABC registration Determinations, Chaly-Garcia v. U.S., 508 F.3d 1201 (9th Cir. 2007)," which revised current guidance in determining what constitutes evidence of registration for ABC benefits and announced appropriate revisions to the ABC Procedures Manual. On August 15, 2008, in accordance with its new guidance memorandum, Defendants sent Plaintiff a letter informing him that he is an ABC class member eligible for ABC benefits. The letter requests that Plaintiff submit a separate Form I-881, Application for Suspension of Deportation or Special Rule Cancellation or Removal under Section 203 of NACARA within 60 days.[3] On August 29, 2008, the Board of Immigration Appeals administratively closed Plaintiff's removal proceedings pursuant to Chaly-Garcia and the parties' agreement. See Defs.' Reply in Supp., Exh. A., at 1. In addition, Defendants approved Plaintiff's work permit application.

      Defendants now move to dismiss Plaintiff's claims for lack of subject matter jurisdiction. Defendants argue that Plaintiff has received all of the specific relief requested in the Complaint and as such, his claims are moot. Defendants further contend that whether they ultimately follow required ABC Agreement procedures is not an issue that is ripe for judicial review because

---

[3]NACARA is the Nicaraguan and Central American Relief Act, Pub. L. 105-100z, which provides a separate process by which removable Guatemalan and Salvadoran aliens may be granted Legal Permanent Resident ("LPR") status. An individual with LPR status is entitled to a Permanent Residence Card (*i.e.*, a "green card"), which confers work authorization. By contrast, asylum grantees are generally eligible for Employment Authorization Documents, which are valid for only two years. If an ABC-eligible alien is granted LPR status under NACARA, that individual is still entitled to a de novo asylum interview under the ABC Agreement. If an ABC-eligible alien is denied NACARA status or chooses not to submit a NACARA application, that individual is still entitled to a de novo asylum interview under the ABC Agreement. Defendants maintain that this process is more administratively efficient because: (1) a high percentage of applicants that are granted LPR status under NACARA do not pursue their asylum claims; and (2) NACARA is only available to removable aliens and if the ABC process were conducted first and asylum granted, that individual would no longer be removable, and thus no longer eligible for LPR status under NACARA. See generally Defs.' Mem. In Supp., Decl. of Calton Yue, Ex. 2.

PAGE 5 - OPINION AND ORDER

Defendants have not made a final decision regarding Plaintiff's asylum application. Defendants argue that Plaintiff's claims are either moot or not ripe for adjudication and thus, the court should dismiss the case.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed where there is no "true case or controversy" and thus, the court lacks jurisdiction over the subject matter. Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1157 (9th Cir. 2007); see also St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) ("Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of Article III of the federal Constitution."); see also Aguirre v. S.S. Sohio Intrepid, 801 F.2d 1185, 1189 (9th Cir. 1986) ("Mootness is an element of justicibility and raises a question as to our jurisdiction"). Like other challenges to a court's subject matter jurisdiction, motions raising issues of ripeness or mootness are reviewed under Federal Rule of Civil Procedure 12(b)(1). St. Clair, 880 F.2d at 201.

Where, as here, a Rule 12(b)(1) motion disputes the factual basis of a complaint's jurisdictional allegations (*i.e.*, the existence of subject matter jurisdiction in fact), "the court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); see also Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). In such circumstances, "the court need not presume the truthfulness of the plaintiff's allegations." Safe Air for Everyone, 373 F.3d at 1039. Rather, the plaintiff must "present affidavits or other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter

PAGE 6 - OPINION AND ORDER

jurisdiction." St. Clair, 880 F.2d at 201. Because federal courts are courts of limited jurisdiction, the court will generally presume that it lacks subject matter jurisdiction until the plaintiff proves otherwise. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).[4]

### III. Discussion

In his Complaint, Plaintiff asserts four claims: (1) that he properly tendered notice of his intent to opt-in to the ABC Agreement and is entitled to the rights and benefits of the Agreement, Complaint ¶ 23; (2) that he is entitled to an asylum adjudication that conforms with specific procedures required under the ABC Agreement, Id. ¶ 24; (3) that he should be free from removal proceedings in any form until all of his rights under the ABC Agreement have been effectuated, Id. ¶ 25; and (4) that he should have the right to work authorization adjudication under the ABC Agreement, Id. ¶ 26. I conclude that each of Plaintiff's claims are either moot, or not ripe for judicial review.

#### A. Mootness

"To maintain an extant claim, a litigant must continue to have a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'" Abdala v. I.N.S., 488 F.3d 1061, 1063 (9th Cir. 2007). "A case, or an issue in a case, is considered moot if it has lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract propositions of law." Lindquist v. Idaho Bd. of Corrections, 776

---

[4]Because the court lacks jurisdiction over the subject matter of Plaintiff's claims, I need not address Defendants' argument that Plaintiff failed to state a claim under Rule 12(b)(6) claims. See 5 C. Wright & A. Miller, Federal Practice and Procedure § 1350 (noting that "when the motion is based on more than one ground, the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying objections and defenses become moot . . . .").

PAGE 7 - OPINION AND ORDER

F.2d 851, 853-54 (9th Cir. 1985) (internal quotations omitted); see also Chang v. United States. 327 F.3d 911, 918 (9th Cir. 2003) ("A case properly brought in the first instance is rendered moot when interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."). The mootness doctrine applies to a complaint for which relief has already been granted. Idaho Dept. of Fish & Game v. Nat'l Marine Fisheries Serv., 56 F.3d 1071, 1074-75 (9th Cir. 1995); see also Aguirre, 801 F.2d at 1189 ("Where the question sought to be adjudicated has been mooted by developments subsequent to the filing of the complaint, no justiciable controversy is presented."). The party asserting mootness bears the burden of establishing that there is no effective relief for a court to provide. Chang, 327 F.3d at 918.

Here, Plaintiff's claims are moot because Defendants have declared that he is an ABC class member eligible for benefits under the ABC Agreement, issued him a work permit, and administratively closed his removal proceedings. This is exactly the relief that Plaintiff seeks in his First, Second, Third, and Fourth Claims. As such, there is no effective relief left for the court to provide and Plaintiff's claims are moot. See GATX/Airlog Co. V. U.S. Dist. Court for Northern Dist. of Cal., 192 F.3d 1304, 1306 (9th Cir. 1999) (A case should be dismissed as moot when "there is no effective relief remaining for a court to provide.").

Plaintiff's Complaint focused on Defendants' "denial" of his rights and benefits under paragraph 35 of the ABC Agreement. In his First and Second Claims, Plaintiff alleges that he "properly tendered notice of his intent to opt-in to the ABC Agreement and is entitled to the rights and benefits thereunder," and that he is entitled to an asylum adjudication that complies with the specific requirements of the ABC Agreement. Complaint ¶¶ 23-24. In light of Chaly-Garcia, however, Defendants issued a new policy memorandum regarding what constitutes

proper notice of intent to receive ABC benefits.  Defendants determined that Plaintiff's December 18, 1991 asylum application was, in fact, sufficient notice of intent to receive ABC benefits.  As such, the <u>denial</u> of Plaintiff's status as an ABC class member is no longer an issue.  Moreover, since Defendants determined that Plaintiff is eligible for ABC benefits, he will receive the specific relief requested in his Second Claim (<u>i.e.</u>, a <u>de</u> <u>novo</u> asylum interview and adjudication) if he so chooses.  In light of Defendants' determination that Plaintiff is an ABC class member eligible for benefits, there is no further relief that the court can provide at this time.  Whether Defendants ultimately follow the procedures set forth in the ABC Agreement in making a final asylum determination is not yet ripe for review.  <u>See</u> <u>infra</u>.  Contrary to Plaintiff's argument, I find that Defendants' voluntary determination that Plaintiff is an ABC class member eligible for a <u>de</u> <u>novo</u> asylum adjudication provides both material and individualized relief.  Plaintiff's First and Second Claims are moot.

      Plaintiff's Third Claim is also moot.  There, Plaintiff asserted that he has the "right to be free from removal or deportation proceedings in any form until all of his rights under the ABC Agreement have been effectuated."  Complaint ¶ 25.  In light of their determination that Plaintiff is an ABC class member entitled to the benefits of the Agreement, Defendants administratively closed Plaintiff's removal proceedings.  Furthermore, because Plaintiff is an ABC class member, Defendants are obligated to stay or administratively close any deportation proceeding "until the class member has had the opportunity to effectuate his or her rights under th[e] agreement."  <u>ABC</u>, 760 F. Supp. at 805 (paragraph 19).  Accordingly, Plaintiff has received the specific relief requested in his Third Claim, and there is no additional effective relief for the court to provide.

      Plaintiff cites no authority for the proposition that Defendants must terminate his removal

PAGE 9 - OPINION AND ORDER

proceedings, rather than administratively close the proceedings in order to moot his claim. In any event, this court has no authority to prevent, or review the initiation of removal proceedings. See 8 U.S.C. § 1252(a)(5) (a petition with the appropriate court of appeals "shall be the sole and exclusive means for judicial review of an order of removal"); 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."). Plaintiff's Third Claim is moot.

In his Fourth Claim, Plaintiff alleges that he enjoys the right to work authorization under the agreement and that Defendants' procedures regarding work authorization violated the agreement. Again, Defendants have already granted Plaintiff a work permit and thus, there is no effective relief for the court to provide. Thus, Plaintiff's Fourth Claim is moot.

Moreover, none of the exceptions to the mootness doctrine are applicable here. Defendants' "allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000). Plaintiff will never again be considered an individual who did not timely register for benefits under the ABC Agreement and denied benefits on that basis, which was the focus of his Complaint. Plaintiff is now considered an ABC class member eligible for benefits, and any claim he has regarding Defendants' improper implementation of ABC procedures will be raised by a benefit-eligible ABC class member, which is both a different issue than the claim raised in his Complaint and not yet ripe for review. Because there is no reasonable possibility that Plaintiff will again be subjected to the same allegedly wrongful behavior, his claims are moot and do not fall within any exception.

PAGE 10 - OPINION AND ORDER

B. Ripeness

"Ripeness is a justicibility doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807-08 (2003) (quotation omitted).  Whether a claim is ripe for review depends on whether: (1) the issues are fit for judicial decision; and (2) the parties will suffer hardship if the court declines to consider the issues. Id. at 808.  A claim is "fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." Exxon Corp. v. Heinze, 32 F.3d 1399, 1404 (9th Cir. 1994) (quotation omitted).

Here, Plaintiff's abstract concerns regarding a potential denial or rescission of ABC benefits, their potential use of improper procedures, or "negative cascading effects" are not ripe for judicial review.  Plaintiff has presented no evidence that there are, or will be, any "negative cascading effect" or "taint" resulting from Defendants' previous actions.  As an ABC class member, Plaintiff is now entitled to the specific procedural benefits set out in the ABC Agreement, including a de novo asylum adjudication.  As noted, Defendants cannot schedule a de novo ABC interview and adjudication until Plaintiff has had the opportunity to submit a NACARA application.  If Plaintiff chooses not to submit a NACARA application or the application is denied, he is still entitled to a de novo asylum interview under the ABC Agreement.  But, until Defendants make a final agency decision regarding his asylum and/or NACARA application, Plaintiff's speculative concerns about Defendants' use of improper

PAGE 11 - OPINION AND ORDER

asylum adjudication procedures are not ripe for judicial review.

## **Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss (doc. 18) is GRANTED, and Plaintiff's claims are DISMISSED.

IT IS SO ORDERED.

DATED this     5th     day of January, 2009.

                                                /s/ Garr M. King  
                                                      Garr M. King  
                                       United States District Court Judge